# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) Bankruptcy No. 05 B 16847 |
| | ) Chapter 7 |
| KERRY ROBERT KNIPPEN, | ) Judge John H. Squires |
| | ) |
| Debtor. | ) |
| | ) |
| DAVID E. GROCHOCINSKI, TRUSTEE, | ) Adv. No. 06 A 00588 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JODI KNIPPEN; DALE CUTSINGER; and | ) |
| SANDRA LOU CUTSINGER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the complaint filed by David E. Grochocinski,

the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Kerry Robert Knippen (the

"Debtor") against Jodi Knippen ("Jodi"), Dale Cutsinger ("Dale"), and Sandra Lou Cutsinger

("Sandra") (collectively the "Defendants") to avoid an alleged fraudulent transfer pursuant

to 11 U.S.C. §§ 548(a) and 550(a) and 740 ILL. COMP. STAT. 160/5, 160/6, and 160/9(b) of

the Illinois Uniform Fraudulent Transfer Act, and on the motion for directed judgment

findings made at trial by the Defendants pursuant to Federal Rule of Bankruptcy Procedure

7052 which incorporates Federal Rule of Civil Procedure 52(c). For the reasons set forth

herein, the Court grants judgment in favor of the Trustee and against Jodi under Counts I, III,

-2-

and IV of the complaint and finds that the Debtor's transfer of real property located in

Aurora, Illinois to Jodi was a constructively fraudulent conveyance under 11 U.S.C. §

548(a)(1)(B), 740 ILL. COMP. STAT. 160/9(b), 740 ILL. COMP. STAT. 160/5(a)(2) and 160/6(a)

and (b). Thus, the Trustee may avoid the transfer of that property by the Debtor to Jodi

pursuant to 11 U.S.C. § 544(b)(1). Under 11 U.S.C. § 550(a)(1), the Trustee may recover

from Jodi, for the benefit of the Debtor's estate, the sum of $20,000.00, which represents the

value of the Debtor's one-half equity interest in that property, less the value of the property

he received in the marital dissolution proceeding. In addition, the Court grants judgment in

favor of the Trustee and against Dale and Sandra pursuant to Counts II and V of the

complaint. The Trustee may recover under 11 U.S.C. § 550(a)(2) and 740 ILL. COMP. STAT.

160/9(b) from Dale and Sandra, as subsequent transferees of Jodi, for the benefit of the

Debtor's estate, the sum of $20,000.00, which consists of the value of the Debtor's one-half

equity interest in the Aurora, Illinois property, less the value of the property he received in

the martial dissolution proceeding. The Trustee may recover only one satisfaction from the

Defendants pursuant to 11 U.S.C. § 550(d). Finally, the Court denies the Defendants' motion

for judgment on directed findings under Bankruptcy Rule 7052.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and

Internal Operating Procedure 15(a) of the United States District Court for the Northern

District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

·3·

## II. FACTS AND BACKGROUND

The Debtor married Jodi on September 10, 1995. Thereafter, in January of 2002, Jodi filed a petition for dissolution of marriage in the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois. The couple engaged in a lengthy and protracted battle over the custody of their two young minor children. Both Jodi and the Debtor were represented by attorneys during those proceedings and each incurred legal fees in excess of $30,000.00 and $40,000.00, respectively. After several years of continued litigation, they reached an agreement with respect to the custody of their children. Subsequently, the remaining matters regarding the division of their property and debts were quickly resolved. On September 30, 2004, a judgment for dissolution of marriage was entered by the state court. (Defs. Ex. No. 1.) The judgment incorporated a Marital Settlement Agreement (the "Settlement Agreement") that the Debtor and Jodi entered into and the state court approved. (Defs. Ex. No. 2 & Trustee Ex. No. 3.)

Pursuant to the Settlement Agreement, Jodi and the Debtor divided and received certain assets and agreed to pay certain liabilities. (*Id.* Art. VII.) In particular, Jodi received the marital home located at 1050 Rosefield Lane, Aurora, Illinois (the "Aurora Property") which she and the Debtor owned as joint tenants. (*Id.*) This transfer is the main focus of the instant litigation. Undisputedly, the Aurora Property was the largest asset of Jodi and the Debtor. Under the Settlement Agreement, Jodi was responsible for the $132,775.90 first mortgage on the Aurora Property as well as the junior home equity loan in the amount of $18,946.82. (*Id.*) Moreover, Jodi retained ownership of the Mazda 626 automobile and a

-4-

checking account at NLSB. (*Id.*) She was also liable for her unpaid attorney's fees. (*Id.* Art.
VI.)[1]

The Debtor, on the other hand, retained ownership of a Suzuki all-terrain vehicle, a
1977 Chevrolet Camaro (Defs. Ex. Nos. 5a-c), two checking accounts at Oxford Bank, his
interest in Hunter Tech, Inc., all tools in his possession, and any 2003 federal and/or state
income tax refunds. (Defs. Ex. No. 2 & Trustee Ex. No. 3, Art. VII.) In addition, the Debtor
received three other vehicles: a 1991 Toyota Four-Runner (Defs. Ex. No. 6); a 1991 Dodge
Ram 250 van; and a GMC van. (Defs. Ex. No. 2 & Trustee Ex. No. 3, Art. VII.) These
items of property were not assigned specific values in the Settlement Agreement. (*Id.*)

The Debtor was responsible for the credit card debts owed to Shell, Hawthorne Visa,
and any other cards held solely in his name. (*Id.*) Jodi was responsible for the credit card
debts owed to J.C. Penney, Discover Card, and Bank One Visa. (*Id.*) Further, she was
responsible for the unpaid promissory notes to Dale and Sandra. (*Id.*) The amounts of these
debts were not specified in the Settlement Agreement. (*Id.*) Finally, both Jodi and the
Debtor waived any right to maintenance. (*Id.* Art. IV.) Jodi and the Debtor testified before
the state court that they believed that the Settlement Agreement fairly and equitably divided
the marital estate. (Defs. Ex. No. 3 & Trustee Ex. No. 4, 8:1-4; 17:9-11.)

In accordance with the terms of the Settlement Agreement, on September 30, 2004,
the Debtor executed a quit claim deed that conveyed his interest in the Aurora Property to
Jodi. (Trustee Ex. No. 5.) The quit claim deed was not recorded until October 28, 2004, in

---

[1] One of her attorneys recorded a judgment lien of $8,200.00 against the already
encumbered Aurora Property on October 29, 2004. (Defs. Ex. No. 13.)

·5·

DuPage County, Illinois. (*Id.*) Subsequently, on November 10, 2004, Jodi executed a warranty deed that conveyed her interest in the Aurora Property to her uncle by marriage, Dale, and aunt, Sandra. (Defs. Ex. No. 12 & Trustee Ex. No. 6.) The deed was recorded in DuPage County, Illinois on that same date. (*Id.*) In exchange for the transfer of the Aurora Property, subject to the attorney's lien and the liens of the first and second mortgage holders, Jodi received $200,000.00 from Dale and Sandra. Dale testified that he agreed to purchase the Aurora Property from Jodi because he knew she was having difficulty making the monthly payments and he wanted her and the children to continue living in the house. Dale has charged Jodi below market rental of $875.00 per month, and made a verbal agreement with her to resell the Aurora Property to her if and when she can afford to buy it. At all relevant times, Jodi and the children have continued to reside in the Property.

Dale further testified that in his opinion, the Aurora Property was worth $215,000.00. Dale stated that the $200,000.00 sale price was arrived at after considering Jodi's unpaid $8,200.00 attorney's judgment lien as well as a potential real estate broker's commission. An appraisal was made on the Aurora Property in June of 2006. (Defs. Ex. No. 10 & Trustee Ex. No. 7.) That appraisal established a fair market value for the Aurora Property, as of November 2004, of $208,000.00. (*Id.*)

The $200,000.00 that Jodi received from Dale and Sandra was deposited into a trust account at Krentz & Krentz, P.C. (Trustee Ex. No. 12 & Defs. Ex. Nos. 11 & 14.) Those funds were used to pay the first mortgage and junior home equity loan on the Aurora Property, plus monthly rent of $875.00 to Dale and Sandra, credit card debts, and some of the unpaid attorney's fees owed by Jodi from the marital dissolution proceeding. (*Id.*)

-6-

On April 28, 2005, approximately seven months after he transferred his interest in the Aurora Property to Jodi, the Debtor filed a voluntary Chapter 7 bankruptcy petition. (Trustee Ex. No. 1.)  Thereafter, the Trustee was appointed.  The Debtor's Schedules and Statement of Financial Affairs reveal that he had no real property. (*Id.* Schedule A.)  Further, the Debtor listed personal property in the total amount of $8,453.33. (*Id.* Schedule B & Defs. Ex. No. 25.) Among some of that personal property was a checking account at Oxford Bank which the Debtor valued at $500.00, household goods and furnishings valued at $500.00, clothing valued at $300.00, a 1989 GMC van valued at $50.00, a 1991 Dodge Ram 250 van valued at $2,500.00, a 1977 Camaro, jointly owned with his father, valued at $900.00, tools worth $750.00, and eighty-five percent of his gross monthly income of $2,833.33. (*Id.*) Finally, the Debtor listed his one-hundred percent ownership of Hunter Tech, Inc. as having a zero value. (*Id.*)  The Debtor did not list any secured debt. (Trustee Ex. No. 1, Schedule D.)  The Debtor listed unsecured debt in the amount of $69,046.52. (Trustee Ex. No. 1, Schedule F & Defs. Ex. No. 25.)  The Debtor's schedule of current income at the time of his bankruptcy filing shows that his monthly income totaled $1,638.50. (Trustee Ex. No. 1, Schedule I & Defs. Ex. No. 25.) The Debtor listed monthly expenses of $5,581.00. (Trustee Ex. No. 1, Schedule J & Defs. Ex. No. 25.)  The Debtor disclosed the transfer of the Aurora Property to Jodi on his Statement of Financial Affairs.  (Trustee Ex. No. 1, Statement of Financial Affairs & Defs. Ex. No. 26.)

The Trustee filed the instant adversary proceeding on February 21, 2006.  The five-count complaint alleges that the Debtor's transfer of his interest in the Aurora Property to Jodi, which she subsequently transferred to Dale and Sandra, was a fraudulent conveyance.

-7-

Specifically, the complaint alleges the following causes of action against the Defendants: (1)

avoidance of the transfer pursuant to 11 U.S.C. §§ 548(a) and 550(a); (2) avoidance of the

subsequent transfer to Dale and Sandra under § 550(a); (3) avoidance of the transfer pursuant

to 740 ILL. COMP. STAT. 160/5 and 160/9(b); (4) avoidance of the transfer pursuant to 740 ILL.

COMP. STAT. 160/6 and 160/9(b); and (5) avoidance of the subsequent transfer to Dale and

Sandra pursuant to 740 ILL. COMP. STAT. 160/9(b).

The Court held a trial in this matter.  The Defendants made a motion for directed

judgment findings under Federal Rule of Bankruptcy Procedure 7052, which incorporates

by reference Federal Rule of Civil Procedure 52(c).  The Court reserved ruling on the motion

until after the close of all of the evidence.  The Defendants' motion is denied because the

Trustee has proven the requisite elements under some of his theories of recovery as discussed

*infra.*

## III. DISCUSSION

### A.    Count I: 11 U.S.C. §§ 548(a)(1) and 550(a)

Pursuant to Count I of the complaint, the Trustee seeks to avoid the transfer of the

Aurora Property from the Debtor to Jodi, who subsequently conveyed the Property to Dale

and Sandra, as a fraudulent conveyance. In addition, the Trustee seeks an order allowing him

to recover from Jodi, for the benefit of the Debtor's estate, the value of the Aurora Property

transferred by the Debtor to Jodi.

"Section 548 of the Bankruptcy Code enables a trustee to avoid certain pre-petition

transfers of property on the ground that the transfers were fraudulent." *Schechter v. 5841*

-8-

*Bldg. Corp. (In re Hansen)*, 341 B.R. 638, 642 (Bankr. N.D. Ill. 2006). "Fraudulent

conveyance law protects creditors from last-minute diminutions of the pool of assets in

which they have interests." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890,

892 (7th Cir. 1988). Section 548(a)(1) of the Bankruptcy Code provides as follows:

(a)(1)  The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

   (A)  made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

   (B)  (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

        (ii)  (I)   was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

             (II)  was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

             (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1).

A cause of action under § 548(a)(1)(A) is commonly referred to as "actual fraud"

because of the element of the debtor's actual intention to hinder, delay, or defraud creditors.

*In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1394 (7th Cir. 1996). A cause of action under §

-9-

548(a)(1)(B), on the other hand, is often referred to as "constructive fraud" because it omits any element of intent.[2] *Id.* One decision has described the differences between the two causes of action under § 548(a)(1):

> The focus in the inquiry into actual intent is on the state of mind of the debtor. Neither malice nor insolvency [is] required. Culpability on the part of the . . . transferees is not essential.
> Unlike constructively fraudulent transfers, the adequacy or equivalence of consideration provided for the actually fraudulent transfer is not material to the question whether the transfer is actually fraudulent. . . . Conversely, the transferor's intent is immaterial to the constructively fraudulent transfer in which the issue is the equivalence of the consideration coupled with either insolvency, or inadequacy of remaining capital, or inability to pay debts as they mature.

*Plotkin v. Pomona Valley Imps., Inc. (In re Cohen)*, 199 B.R. 709, 716-17 (B.A.P. 9th Cir. 1996). The trustee has the burden of proving a fraudulent transfer under § 548. *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002); *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 587 (Bankr. N.D. Ill. 2005). Here, the Trustee has not specifically alleged or distinguished between actual fraud under § 548(a)(1)(A) or constructive fraud under § 548(a)(1)(B) in his complaint. Hence, the Court will address both theories.

### 1.   Section 548(a)(1)(A)

First, the Court will address the Trustee's claim that the transfer of the Aurora Property by the Debtor to Jodi constituted fraud in fact or actual fraud pursuant to § 548(a)(1)(A). Under § 548(a)(1)(A), a transfer can be fraudulent if it was made with "actual

---

[2]   The *FBN Food* case references § 548(a)(2). Section 548(a)(1)(B)(i)-(ii) was formerly designated as § 548(a)(2)(A)-(B) before amendment by the Religious Liberty and Charitable Donation Protection Act of 1998, Pub. L. No. 105-183, effective for cases pending or commenced on or after June 19, 1998.

intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A). Because there is

rarely direct evidence of the intent underlying a transfer of property, courts look to

circumstantial evidence, referred to as the badges of fraud, in determining whether a transfer

was intended to hinder, delay, or defraud creditors. *Carmel v. River Bank Am. (In re FBN

Food Servs., Inc.)*, 185 B.R. 265, 275 (N.D. Ill. 1995), *aff'd*, 82 F.3d 1387 (7th Cir. 1996).

Those badges of fraud include the following: (1) absconding with the proceeds of the transfer

immediately after their receipt; (2) absence of consideration when the transferor and

transferee know that outstanding creditors will not be paid; (3) a huge disparity in value

between the property transferred and the consideration received; (4) the fact that the

transferee is or was an officer, agent, or creditor of an officer of the corporate transferor; (5)

insolvency of the debtor; and (6) the existence of a special relationship between the debtor

and the transferee. *Id.*; *McCook Metals*, 319 B.R. at 588 n.13 (*citing FBN Food*).

There was no direct evidence that the transfer of the Debtor's interest in the Aurora

Property to Jodi was made with actual intent to hinder, delay, or defraud his creditors. Thus,

the Court turns to the badges of fraud to determine whether the transfer was intended to harm

his creditors.

First, there was no evidence of absconding with proceeds of the transfer. The Debtor

transferred his interest in the Aurora Property to Jodi who, in turn, transferred it to Dale and

Sandra for the sum of $200,000.00. The proceeds of that transfer were deposited into a trust

account and some of Jodi's debts and expenses (including some that she and the Debtor

incurred jointly) were paid therefrom. Next, there was actual consideration given for the

transfer of the Aurora Property. The Debtor made such transfer to Jodi pursuant to the

-11-

Settlement Agreement and, in exchange, received other personal property, including several automobiles, his tools, the income tax refund, checking account proceeds, and his interest in Hunter Tech, Inc. Further, Jodi, the transferee, was not an officer, agent, or creditor of an officer of a corporate transferor. Indeed, there was a special relationship between the Debtor and Jodi. They were former spouses and the transfer of the Aurora Property was made pursuant to the Settlement Agreement entered into between the parties in their marital dissolution proceeding. The remaining two badges of fraud—the insolvency of the debtor and a huge disparity in value between the property transferred and the consideration received—warrant a more detailed discussion.

The Court must determine whether the Debtor was insolvent. The Bankruptcy Code employs a balance sheet approach to the question of insolvency. *Steege v. Affiliated Bank/N. Shore Nat'l (In re Alper-Richman Furs, Ltd.)*, 147 B.R. 140, 154 (Bankr. N.D. Ill. 1992). Specifically, § 101(32) of the Code defines "insolvent" and states in relevant part that:

> "insolvent" means—
> (A) with reference to an entity . . . financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>> (ii) property that may be exempted from property of the estate under section 522 of this title[.]

11 U.S.C. § 101(32)(A). The Seventh Circuit has interpreted this definition to require courts to determine what a willing buyer would pay for the debtor's entire package of assets and liabilities. *Covey v. Commercial Nat'l Bank of Peoria*, 960 F.2d 657, 660 (7th Cir. 1992).

-12-

If the price is positive, the debtor is solvent; if the price is negative, the debtor is insolvent. *Id.* A trustee may utilize appropriate means to prove insolvency, including balance sheets, financial statements, appraisals, expert reports, and other affirmative evidence. *Freeland v. Enodis Corp. (In re Consol. Indus. Corp.)*, 292 B.R. 354, 360 (N.D. Ind. 2002).

With respect to whether the Debtor was insolvent, the Trustee testified that the Debtor informed him that his financial condition at the time of the transfer of the Aurora Property in September 2004 was the same in April 2005 when he filed his bankruptcy petition. The Debtor's testimony at trial and his Schedules corroborated the testimony of the Trustee. A review of the Debtor's Schedules and Statement of Financial Affairs will assist in the determination of the Debtor's solvency. Pursuant to the Debtor's Schedule A, he did not own any real property after the transfer to Jodi. (Trustee Ex. No. 1, Schedule A.) On his Schedule B, the Debtor listed personal property in the total amount of $8,453.33. (*Id.* Schedule B & Defs. Ex. No. 25.) The Debtor listed unsecured debt in the amount of $69,046.52. (*Id.* Schedule F.) The Debtor's schedule of current income shows that his monthly income totaled $1,638.50. (*Id.* Schedule I.) The Debtor listed monthly expenses of $5,581.00. (*Id.* Schedule J.) Based on this evidence, the Debtor's liabilities of $69,046.52 exceeded his listed assets of $8,453.33. Moreover, his monthly expenses of $5,581.00 greatly surpassed his monthly income of $1,638.50. Hence, the Court concludes that the Debtor was balance-sheet insolvent when the transfer of the Aurora Property was made to Jodi in September 2004, or he was rendered insolvent thereby.

Finally, the Court must determine whether there was a huge disparity in value between the property transferred and the consideration received. The Trustee testified that

·13·

in his opinion, at the time of the transfer in September 2004, the Aurora Property had an estimated value range of $210,000.00-$215,000.00 and had mortgage liens of approximately $153,000.00. Thus, according to the Trustee, the value of the equity in the Aurora Property was between $57,000.00-$62,000.00. The Trustee's opinion with respect to the value of the Aurora Property was based on a review of comparable sales in the area as well as a tract search of the existing liens against the Property. In addition, the Trustee formed his opinion based on his twenty years experience as a panel trustee and his approximate thirty years as a practicing attorney. Moreover, the written appraisal of the Aurora Property established a November 2004 fair market value of $208,000.00. (Defs. Ex. No. 10 & Trustee Ex. No. 7.)

The Court, in considering the Trustee's testimony and the written appraisal, finds that the Aurora Property was worth approximately $210,000.00 at the time of the transfer. The Court further finds that the equity in the Property at the time of the transfer to Jodi was $57,000.00 ($210,000.00 - $153,000.00[3] = $57,000.00). The Debtor's one-half equity interest in the Aurora Property was $28,500.00.

The Trustee further testified that, in his opinion, the consideration received by the Debtor for the transfer of the Aurora Property to Jodi totaled approximately $8,500.00. The Trustee arrived at this figure by examining the property that the Debtor received under the

---

[3] This figure was arrived at by adding the rounded first and second mortgage balances ($134,000.00 + $19,000.00 = $153,000.00). (Defs. Ex. Nos. 14-16.) The transfer between the Debtor and Jodi occurred when his deed to her was made, executed, and delivered on September 30, 2004. However, the transfer was not effective as to third parties, such as the Trustee and the Debtor's creditors, until the deed was recorded in accordance with Illinois law. See 765 ILL. COMP. STAT. 5/30. This recording occurred on October 28, 2004. (Trustee Ex. No. 5.) The judgment for the unpaid attorney's fees, which was recorded the following day, did not serve to further reduce the equity in the Aurora Property, nor is it superior to the Trustee's causes of action.

-14-

Settlement Agreement. The Trustee valued the 1977 Camaro automobile, which the Debtor

co-owned with his father, at $5,000.00. Further, he valued the other vehicles and property

that the Debtor received at approximately $3,500.00. The Trustee assigned no value to the

Debtor's business, Hunter Tech, Inc. The Debtor testified that this company is a personal

service corporation in which he uses his own tools to repair Hunter brand hydraulic lifts. The

Trustee testified that the stock of this closely held corporation had no value. In addition, the

Trustee afforded no value to the parts and inventory of Hunter Tech, Inc. because those items

were on consignment from Hunter Industries. The Trustee's opinion is supported by the

values ascribed to this property in the Debtor's Schedules. (Trustee Ex. No. 1 & Defs. Ex.

No. 25, Schedule B.)

The Court finds the testimony of the Trustee, with respect to the value of these assets,

credible, unrebutted, and supported by the documentary evidence–the Debtor's Schedules.

(Trustee Ex. No. 1 & Defs. Ex. No. 25.) Indeed, the Trustee has extensive experience

evaluating debtors' assets. The Court is in the best position to assess the credibility of the

witnesses and weigh the evidence. *See Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 575

(1985) (noting that deference is given to a trial court's findings that involve credibility of

witnesses because only the trial judge can be aware of the variations in demeanor and tone

of voice that bear so heavily on the listener's understanding of and belief in what is stated);

*Torres v. Wis. Dept. of Health & Social Servs.*, 838 F.2d 944, 946 (7th Cir.1988) (*citing

Anderson*).

Unfortunately for the Defendants, they failed to establish that the property received

by the Debtor pursuant to the Settlement Agreement had a value higher than the approximate

-15-

$8,500.00 assigned to it by the Trustee. The Court may not arbitrarily reject uncontroverted evidence. *See Fosco v. Fosco (In re Fosco)*, 289 B.R. 78, 87 (Bankr. N.D. Ill. 2002). More importantly, the Defendants failed to proffer any credible evidence to support their argument that Hunter Tech, Inc. had any value or that the 1977 Camaro had a value greater than that determined by the Trustee.

Based on the Trustee's testimony, the Court finds that there was a huge disparity in value between the property transferred and the consideration received. The $28,500.00 that the Debtor transferred to Jodi, which represents his one-half interest in the equity in the Aurora Property, was a far cry from the approximate $8,500.00 he retained in property under the Settlement Agreement. The Court finds the difference of $20,000.00 the shortfall in what the Debtor received in value from what he conveyed to Jodi.

In sum, three out of six badges of fraud have been shown. Even so, the Court finds that this is an insufficient number to infer actual fraud. Accordingly, the Court finds that the Trustee failed to establish by either clear and convincing evidence or by a preponderance of the evidence that the Debtor's transfer of the Aurora Property to Jodi constituted actual fraud under § 548(a)(1)(A).

### 2.    Section 548(a)(1)(B)

Next, the Court will address whether the transfer was constructively fraudulent. In order for the Trustee to establish a fraudulent conveyance under § 548(a)(1)(B), he must prove the following elements: (1) a transfer of the Debtor's property or interest therein; (2) made within one year of the filing of the bankruptcy petition; (3) for which the Debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) either

-16-

(a) the Debtor was insolvent when the transfer was made or he was rendered insolvent thereby; or (b) the Debtor was engaged or about to become engaged in business or a transaction for which his remaining property represented an unreasonably small capital; or (c) the Debtor intended to incur debts beyond his ability to repay them as they matured. *See Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 505 (N.D. Ill. 1988); *Barber v. Dunbar (In re Dunbar)*, 313 B.R. 430, 434 (Bankr. C.D. Ill. 2004); *see also Dunham v. Kisak*, 192 F.3d 1104, 1109 (7th Cir. 1999). The Trustee must prove each element by a preponderance of the evidence. *See McCook Metals*, 319 B.R. at 587. The Court finds that the Trustee has demonstrated all of the requisite elements to establish a constructively fraudulent transfer.

First, the Court finds that the Debtor made a transfer of his interest in the Aurora Property which he jointly owned with Jodi. Next, the transfer was made in September 2004, approximately seven months prior to the Debtor's bankruptcy filing in April 2005. Moreover, the Court found *supra* that the Debtor was insolvent when the transfer was made or was rendered insolvent thereby. In addition, the Court finds that the Debtor was engaged in business for which any property remaining with him was an unreasonably small capital. The Trustee testified that the Debtor's company, Hunter Tech, Inc., had no value. The Trustee stated that the stock of the closely held corporation had no value and that the Debtor's used tools had little value. Indeed, the Debtor listed his ownership interest in Hunter Tech, Inc. as having a zero value on his Schedule B of personal property. (Trustee Ex. No. 1 & Defs. Ex. No. 25, Schedule B.) Moreover, he listed the tools on his Schedule C of property claimed exempt as having a current market value of $750.00. (Trustee Ex. No. 1, Schedule C.)

-17·

Furthermore, the Court finds that after the Debtor transferred his interest in the Aurora Property to Jodi, he had already incurred debts that would be beyond his ability to pay as they matured. The Debtor's Schedules show that his monthly income at the time of his bankruptcy filing was $1,638.50 and his monthly expenses totaled $5,581.00. (Defs. Ex. No. 25 & Trustee Ex. No. 1, Schedule J.)  Further, the Debtor's unsecured debts totaled $69,046.52 and his assets totaled $8,453.33. (*Id.* Schedules B & F.) The Debtor's expenses far exceeded his income, and his assets were substantially less than his liabilities. Thus, the Court infers that after the transfer, the Debtor must have known that he would continue to incur debts beyond his ability to pay them as they matured.

Lastly, the Court must determine whether, under the terms of the Settlement Agreement, the Debtor received consideration from Jodi that had a value that was reasonably equivalent to the value of the Aurora Property. The Bankruptcy Code does not define the term "reasonably equivalent value." The Seventh Circuit, however, has stated that the test utilized to determine "reasonably equivalent value" requires the court to determine the value of what was transferred and compare that value to the value the debtor received. *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). The determination of "reasonably equivalent value" is not a fixed mathematical formula. *Id.*  Section 548(d)(2)(A) of the Code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor. . . ." 11 U.S.C. § 548(d)(2)(A).

Indeed, determination of "reasonably equivalent value" under § 548(a)(1)(B) is a two-step process. *Anand v. Nat'l Republic Bank of Chi.*, 239 B.R. 511, 516-17 (N.D. Ill. 1999). A court must first determine whether the debtor received value, and then examine whether

-18-

the value is reasonably equivalent to what the debtor gave up. *Id.* at 517. The second

inquiry, whether what the debtor gave up was reasonably equivalent to what he received, is

more difficult. *Id.* "Equivalent value must be measured as of the time of the transfer."

*McCook Metals*, 319 B.R. at 589.

Whether "reasonably equivalent value" has been given is a question of fact that

depends on the circumstances surrounding the transaction. *Barber*, 129 F.3d at 387. The

factors utilized to determine reasonably equivalent value are: (1) whether the value of what

was transferred is equal to the value of what was received; (2) the fair market value of what

was transferred and received; (3) whether the transaction took place at arm's length; and (4)

the good faith of the transferee. *Id.*; *Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.),*

238 B.R. 758, 773 (Bankr. N.D. Ill. 1999). The Trustee bears the burden of proof on this

issue. *See Barber*, 129 F.3d at 387.

The Court finds that based on the evidence adduced at trial, the Debtor did not

receive a reasonably equivalent value for the transfer of his one-half interest in the Aurora

Property to Jodi. The Court will examine the factors utilized to make this determination.

As previously discussed, the Court found that the fair market value of the Aurora Property

was $210,000.00, and that the Debtor's one-half interest in the equity in the Property was

$28,500.00, after deducting the pre-existing mortgage liens of approximately $153,000.00.

Further, the Court found that the property that the Debtor received under the Settlement

Agreement totaled approximately $8,500.00. Thus, taking the Debtor's one-half interest,

$28,500.00, and subtracting the property that he received in the marital dissolution

proceeding, $8,500,00, the Court finds that Jodi received $20,000.00 more than the Debtor

-19-

did under the Settlement Agreement. That sum is not reasonable or equivalent on the exchange.

Additionally, the Court finds that no evidence was adduced to show that the transaction did not take place at an arm's length. Indeed, both Jodi and the Debtor were represented by counsel in their negotiations with respect to the Settlement Agreement. Both parties testified that they thought that the Settlement Agreement was fair and equitable. (Defs. Ex. No. 3 & Trustee Ex. No. 4, 8:1-4; 17:9-11.)

Finally, the Court finds that there was no evidence proffered to show that Jodi lacked good faith. She testified that after she and the Debtor resolved the custody issue, the distribution of the property was negotiated in short order, and the Settlement Agreement was drafted to resolve the division of property and memorialize the settlement on the custody and child support issues. Based on these factors, the Court concludes that the consideration that the Debtor received from Jodi under the terms of the Settlement Agreement did not have a value that was reasonably equivalent to the value of the Debtor's undivided one-half interest in the Aurora Property.

In sum, the Court finds that the Trustee has met all of the elements to establish that the transfer of the Aurora Property by the Debtor to Jodi was constructively fraudulent under § 548(a)(1)(B). Thus, the Trustee may avoid the transfer of the Aurora Property by the Debtor to Jodi.

### 3.   Section 550(a)

Next, pursuant to 11 U.S.C. § 550(a), the Trustee seeks to recover from Jodi, for the benefit of the Debtor's estate, the value of the property transferred by the Debtor to Jodi.

-20-

When a transfer is avoided under § 548(a), the next step is to look to § 550(a). Section

550(a) sets forth the parties from whom fraudulent transfers can be recovered, *Fisher v.*

*Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 880 (Bankr. N.D. Ill. 2006), and provides as

follows:

> (a) Except as otherwise provided in this section, *to the extent that a transfer is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate,* the property transferred, or, *if the court so orders, the value of such property*, from–
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>>
>> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (emphasis supplied).

A court must first make a determination whether the transfer was fraudulent under

§ 548(a) and, therefore, avoidable before that transfer can be recovered pursuant to § 550(a).

Section 550(a) is a secondary cause of action after a trustee has prevailed pursuant to the

avoidance sections of the Bankruptcy Code. *Santee v. Nw. Nat'l Bank (In re Mako, Inc.)*,

127 B.R. 471, 473 (Bankr. E.D. Okla. 1991). "Section 550(a) stands as a recovery statute

only and not as a primary avoidance basis for an action, as it will only survive when coupled

with the transfer avoidance sections of the Code." *Id.* Moreover, under § 550(d), a trustee

is "entitled to only a single satisfaction under subsection (a) of this section." 11 U.S.C. §

550(d). Therefore, only the total of $20,000.00 may be recovered by the Trustee from either

Jodi, or Dale and Sandra, but not $20,000.00 from each.

-21-

Section 550(a) effectively limits actions to only those that benefit the estate. *P.A. Bergner & Co. v. Bank One Milwaukee, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1118 (7th Cir. 1998); *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*, 310 B.R. 107, 126 (Bankr. N.D. Ill. 2004). Section 550 allows the trustee to recover the entire value of the property transferred, even if it exceeds the debt to the creditor that provided the basis for the action. *Kleven v. Stewart (In re Myers)*, 320 B.R. 667, 670 (Bankr. N.D. Ind. 2005). Even though an action to avoid a transfer may be, and often is, brought in conjunction with an action to recover the property transferred or its value, a court must evaluate the two bases of relief separately. *SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Indus., Inc.)*, 328 B.R. 755, 764 (Bankr. S.D. Ohio 2005); *Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 759 (Bankr. C.D. Ill. 1995). "Once the whole transfer has been pulled into the estate, the money is distributed according to the priorities established by the Code and the debtor's own commitments." *FBN Food*, 82 F.3d at 1396.

The Bankruptcy Code does not define "transferee." The Seventh Circuit, however, explains that a "transferee" has "dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Fin.*, 838 F.2d at 893. The "initial" transferee is the first entity to have such a dominion or right. *Kepler v. Aetna Fin. Co. (In re Ausman Jewelers, Inc.)*, 177 B.R. 282, 286 (Bankr. W.D. Wis. 1995). The Court finds that Jodi was the initial transferee of the Aurora Property. She had dominion over the asset and was able to transfer the Property to Dale and Sandra shortly after the Debtor executed a quit claim deed conveying his interest in the Aurora Property to her.

-22-

Because the Court determined that the transfer of the Aurora Property from the Debtor to Jodi was a fraudulent conveyance pursuant to § 548(a)(1)(B), the Trustee may recover the Property or the value thereof pursuant to § 550(a)(1) from Jodi. The Court will allow the Trustee to recover, for the benefit of the Debtor's estate, the value of the Debtor's one-half equity interest in the Aurora Property, $28,500.00, less the $8,500.00 he received in property pursuant to the Settlement Agreement. Thus, the Trustee may recover the sum of $20,000.00 from Jodi for the benefit of the Debtor's estate under § 550(a)(1).

**B.    Count II: 11 U.S.C. § 550(a)**

Pursuant to Count II of the complaint, the Trustee seeks an order under § 550(a) allowing him to recover the Aurora Property transferred by Jodi to Dale and Sandra. The Trustee alleges that Jodi was the initial transferee of the transfer of the Aurora Property and that Dale and Sandra were the immediate or mediate transferees of the initial transferee.

Under § 550(a)(2), an immediate or mediate transferee is "one who takes in a later transfer down the chain of title or possession." *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992). The Court finds that Dale and Sandra were the immediate or mediate transferees of Jodi, the initial transferee. Title to the Aurora Property was subsequently transferred to them in November 2004 by Jodi after the Debtor transferred the asset to her on September 30, 2004.

Because the Court determined that the transfer of the Aurora Property from the Debtor to Jodi was a fraudulent conveyance under § 548(a)(1)(B), the Trustee may recover the Property or the value thereof pursuant to § 550(a)(2) from Dale and Sandra. The Defendants argue that the Trustee may not recover under § 550(a) because the transfer to

-23-

Dale and Sandra from Jodi was for value and in good faith. The Defendants argue that the

purchase price of $200,000.00 and the reduced rent afforded to Jodi by Dale and Sandra

constitute more than adequate value for the purchase of the Aurora Property. In essence, the

Defendants assert a defense under 11 U.S.C. § 550(b). Section § 550(b) provides as follows:

> (b) The trustee may not recover under section (a)(2) of this
> section from–

>> (1) a transferee that takes for value, including
>> satisfaction or securing of a present or
>> antecedent debt, in good faith, and without
>> knowledge of the voidability of the transfer
>> avoided; or

>> (2) any immediate or mediate good faith
>> transferee of such transferee.

11 U.S.C. § 550(b).

This defense is not available to Jodi, the initial transferee. *See Daley v. Chang (In

re Joy Recovery Tech. Corp.)*, 257 B.R. 253, 272 (Bankr. N.D. Ill. 2001). Rather, it is only

available to Dale and Sandra, the immediate or mediate transferees. *See id.* The burden of

proof is on Dale and Sandra to show that they took for value, in good faith, and without

knowledge of the voidability of the transfer. *See Teknek*, 343 B.R. at 881.

Under the § 550(b) exception to a trustee's recovery power, the transferee, which

includes subsequent transferees of the initial transferee from the debtor, must take the

property for value, in good faith, and without knowledge of the avoidability of the initial

transfer. *Bonded Fin.*, 838 F.2d at 896. In order to be protected under § 550(b)(1), the

transferee must take the property without knowledge of the voidability of the transfer

avoided. *Id.* at 898. The Court finds that Dale and Sandra, as the immediate or mediate

-24-

transferees, may properly attempt to assert the § 550(b) defense. Nevertheless, the Court

finds that Dale and Sandra failed to establish all of the necessary elements for the defense to

apply.

First, Dale and Sandra must show that they gave value in exchange for the transfer

of the Aurora Property. Value for purposes of the § 550(b) defense includes value given the

transferee's transferor, and is not limited to value given to the debtor. *Id.* at 897. The Court

finds that the evidence showed that Dale and Sandra gave value to Jodi in exchange for the

transfer of the Property. Indeed, they paid Jodi $200,000.00, a sum within the fair market

value range of the Property. The written appraisal valued the Aurora Property at $208,000.00

(Defs. Ex. No. 10 & Trustee Ex. No. 7), and the Trustee testified that he valued the Property

in the range of $210,000.00-$215,000.00. Dale testified that he arrived at the $200,000.00

purchase price after considering the unpaid attorney's lien and a potential real estate broker's

commission. Based upon the sum that Dale and Sandra paid Jodi, the Court finds that they

took the Aurora Property for value from Jodi.

Next, Dale and Sandra must establish that they took the Aurora Property in good

faith. The Seventh Circuit quoted a portion of the legislative history of § 550(b) that

discusses the good faith element and noted that:

> The phrase "good faith" in [§ 550(b)] is intended to prevent
> a transferee from whom the trustee could recover from
> transferring the recoverable property to an innocent transferee,
> and receiving a transfer from him, that is, "washing" the
> transaction through an innocent third party. In order for the
> transferee to be excepted from liability . . . he himself must be
> a good faith transferee.

*Bonded Fin.*, 838 F.2d at 897.

·25·

Dale testified that he was aware of Jodi's financial difficulties and wanted to craft a solution so that she and the children could remain living in the Aurora Property. He further stated that if Jodi's financial circumstances improved he would allow her to buy back the Property. According to Dale, he purchased the Property from Jodi at fair market value, and he placed the purchase money into a trust fund for Jodi's benefit. From that account, Jodi paid monthly rental to Dale and Sandra in the reduced sum of $875.00, the existing mortgage liens on the Property, and other outstanding personal debts. Dale testified that he worked this deal with Jodi because she was his niece. Further, he stated that he would not have done the same for anyone else. Although Sandra did not testify, there is no indication that her testimony would have differed from Dale's testimony. Hence, the Court finds that Dale and Sandra demonstrated that they took the Aurora Property from Jodi in actual good faith in an attempt to help Jodi and the children by allowing them to remain in the former marital home at a below market rental cost.

Lastly, Dale and Sandra must establish that they took the Aurora Property without knowledge of the avoidability of the transfer. Knowledge of voidability does not require "complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do." *Id.* at 898. A transferee who lacks the necessary information to support an inference of knowledge need not start his own investigation. *Id.*

The Court finds that Dale and Sandra failed to satisfy this element of the defense. Dale candidly testified that he was aware of the financial problems of the Debtor and Jodi at the time he purchased the Aurora Property. Further, Dale admitted that he had lent money to Jodi and the Debtor prior to the time of the transfer. Dale also admitted that not all of the

money had been repaid.   In addition, Jodi testified that she sought Dale's advice and

assistance after the marital dissolution was final because, at that time, she realized that she

would not be able to pay her debts.  Further, she testified that she was receiving threats of

collection from some of the Debtor's creditors. Based on this testimony, the Court finds that

Dale and Sandra were aware of the Debtor's financial difficulties prior to the transfer of the

Aurora Property and, thus, they were not without knowledge of the potential voidability of

such transfer.

The Court takes no pleasure in making these findings as to Dale and Sandra.  The

Court does not doubt that Dale and Sandra's actions sprung from the best of familial

intentions–a desire to assist Jodi and her children.  Nevertheless, the Debtor's creditors were

not considered when he transferred the Aurora Property to Jodi.  The Settlement Agreement

may have been fair and equitable as between the parties to it, but it was not fair as to the

Debtor's unsecured creditors.  The transfer left the Debtor's creditors with virtually no assets

from which they could receive a distribution. The Debtor's subsequent bankruptcy filing less

than a year later, which shows an insolvency that long preceded the filing date, is proof of

the transfer's adverse effect on the Debtor's unsecured creditors.

Accordingly, the Court grants judgment in favor of the Trustee and against Dale and

Sandra under Count II of the complaint.  However, the Court will not enter an order allowing

the Trustee to recover the Aurora Property from Dale and Sandra.  Rather, pursuant to §

550(a)(2), the Trustee may recover from Dale and Sandra, for the benefit of the Debtor's

estate, the sum of $20,000.00.  This amount represents the value of the Debtor's one-half

interest in the equity in the Aurora Property, $28,500.00, less the $8,500.00 he received in property under the Settlement Agreement.

### C.　　Count III:　740 ILL. COMP. STAT. 160/5 and 160/9(b)

In Count III of the complaint, the Trustee seeks to avoid the alleged fraudulent transfer of the Debtor's interest in the Aurora Property to Jodi pursuant to § 160/5 of the Illinois Uniform Fraudulent Transfer Act (the "UFTA"), 740 ILL. COMP. STAT. 160/5. In addition, the Trustee seeks an order allowing him to recover from Jodi, for the benefit of the Debtor's estate, the value of the Aurora Property transferred by the Debtor to Jodi under § 160/9(b) of the UFTA, 740 ILL. COMP. STAT. 160/9(b).

Section 544(b)(1) of the Bankruptcy Code expressly authorizes a trustee to avoid a transfer voidable under applicable state law, although the Trustee in the matter at bar did not specifically assert as much in his complaint. Section 544(b)(1) provides in pertinent part as follows:

> [T]he trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1). This section expressly authorizes a trustee to avoid a transfer voidable under applicable state law. Furthermore, if a transfer is avoided under § 544(b)(1), it can be recovered under § 550 from, among others, "the initial transferee of such transfer . . . or . . . any immediate or mediate good faith transferee of such initial transferee." 11 U.S.C. § 550(a).

-28-

In a case under § 544(b)(1), the trustee has the rights of an unsecured creditor to avoid transactions that can be avoided by such creditor under state law. *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 576-77 (7th Cir. 1998). The trustee need not identify the creditor, as long as an unsecured creditor exists. *Id.* at 577; *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997). The transaction can be avoided completely even if the trustee cannot produce creditors whose liens total more than the value of the property. *Leonard*, 125 F.3d at 544-45.

In the matter at bar, the Trustee has demonstrated, and the Defendants do not dispute, that the Debtor has numerous unsecured creditors. Specifically, the Debtor's Schedule F lists unsecured debts in the sum of $69,046.52. (Defs. Ex. No. 25 & Trustee Ex. No. 1, Schedule F.) Accordingly, the Trustee may proceed against the Defendants under state law.

The applicable state law asserted by the Trustee under § 544(b)(1) is the UFTA. Section 5 of the UFTA pertains to claims that arose before or after the alleged fraudulent transfer and provides as follows:

> § 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

·29·

> (A) was engaged or was about
> to engage in a business or a
> transaction for which the
> remaining assets of the debtor
> were unreasonably small in
> relation to the business or
> transaction; or
>
> (B) intended to incur, or
> believed or reasonably should
> have believed that he would
> incur, debts beyond his ability
> to pay as they became due.

740 ILL. COMP. STAT. 160/5(a).

Sections 5 and 6[4] of the UFTA are analogous to 11 U.S.C. § 548(a)(1)(A) and (B).[5]

See *Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 443 (Bankr. N.D. Ill.

1995). "Because the provisions of the UFTA parallel § 548 of the Bankruptcy Code,

findings made under the Bankruptcy Code are applicable to actions under the UFTA." *Levit

v. Spatz (In re Spatz)*, 222 B.R. 157, 164 (N.D. Ill. 1998); *see also Image Worldwide*, 139

F.3d at 577 (finding that because the Illinois UFTA is a uniform act which has derived

phrases from § 548, the court may look to cases decided under § 548, as well as cases

interpreting other states' versions of the UFTA, for assistance).

---

[4] The Trustee pled a cause of action pursuant to § 160/6 of the UFTA in Count IV of the complaint which is addressed *infra*.

[5] An important difference between § 548 and the UFTA is that § 548 authorizes avoidance of transfers made within one year before the bankruptcy filing. 11 U.S.C. § 548(a). Causes of action for fraudulent conveyances can be brought under the UFTA, however, within four years after the transfer was made. 740 ILL. COMP. STAT. 160/10(a). The transfer of the Aurora Property was made approximately seven months prior to the Debtor's bankruptcy filing. Hence, the Trustee may proceed under both the Bankruptcy Code and the Illinois UFTA.

-30-

Pursuant to § 160/5 of the UFTA, the Trustee may recover the transfer made by the Debtor under two circumstances: (1) if the Debtor made the transfer with actual intent to defraud a creditor; or (2) if the Debtor did not receive reasonably equivalent value in exchange for the transfer and was insolvent at the time of the transfer or became insolvent as a result of the transfer. 740 ILL. COMP. STAT. 160/5. The UFTA speaks to two types of fraud–"fraud in fact" and "fraud in law." *Scholes* v. Lehmann, 56 F.3d 750, 756-57 (7th Cir. 1995).

"Fraud in fact" or actual fraud pursuant to § 160/5(a)(1) of the UFTA occurs when a debtor transfers property with the intent to hinder, delay or defraud his creditors. *Bay State Milling Co. v. Martin (In re Martin)*, 145 B.R. 933, 946 (Bankr. N.D. Ill. 1992), *appeal dismissed*, 151 B.R. 154 (N.D. Ill. 1993). The moving party must prove that there was a specific intent to hinder, delay, or defraud. *Lindholm v. Holtz*, 581 N.E.2d 860, 863 (Ill. App. Ct. 1991) (citing *Gendron v. Chi. & N.W. Transp. Co.*, 564 N.E.2d 1207, 1214-15 (Ill. 1990)). This Court has held that the movant has the burden of proving all elements of actual fraud under Illinois law by clear and convincing evidence. *Grochocinski v. Zeigler (In re Zeigler)*, 320 B.R. 362, 372-73 (Bankr. N.D. Ill. 2005) (collecting cases). *See also Martin*, 145 B.R. at 946. *But see McCook Metals*, 319 B.R. at 587 n.11 (declining to decide whether the higher standard of proof would apply to an actual fraud claim under the UFTA).

In determining whether a transfer is made with actual intent to defraud, the UFTA sets forth several factors–also known as the "badges of fraud"–from which an inference of fraudulent intent may be drawn. Section 5(b) of the UFTA sets forth the following indicia:

(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILL. COMP. STAT. 160/5(b).

When these "badges of fraud" are present in sufficient number, they may give rise to an inference or presumption of fraud. *Steel Co. v. Morgan Marshall Indus., Inc.*, 662 N.E.2d 595, 602 (Ill. App. Ct. 1996). Under the Federal Rules of Evidence, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." Fed. R. Evid. 301. The presence of seven badges of fraud have been held sufficient to raise a presumption of fraudulent intent. *See Berland v. Mussa (In re Mussa)*, 215 B.R. 158, 170 (Bankr. N.D. Ill. 1997).

While a transfer between family members is not proof per se of fraudulent intent, a familial relationship is weighty proof of such intent. *Id.* at 168 (*citing Reisch v. Bowie*, 10

-32-

N.E.2d 663, 666 (Ill. 1937) ("In particular, if a voluntary conveyance from a parent to a child

results in hindering or delaying creditors, it will be regarded as fraudulent in law, irrespective

of the honesty of the grantor's motives.")).  Under the UFTA, an "insider" of an individual

debtor includes relatives of the debtor. 740 ILL. COMP. STAT. 160/2(g)(1)(A). A relative, in

turn, includes a spouse.  740 ILL. COMP. STAT. 160/2(k).

The UFTA expressly provides a defense to fraud in fact under § 160/9(a), and states

as follows:

> A transfer or obligation is not voidable under paragraph (1) of
> subsection (a) of Section 5 against a person who took in good
> faith and for a reasonably equivalent value or against any
> subsequent transferee or obligee.

740 ILL. COMP. STAT. 160/9(a).  Courts have recognized that a defense under § 160/9 consists

of two elements: good faith and reasonably equivalent value.  *Spatz*, 222 B.R. at 168;

*Kennedy v. Four Boys Labor Serv., Inc.*, 664 N.E.2d 1088, 1093 (Ill. App. Ct. 1996).  Full

consideration for the transfer is not, as a matter of law, an absolute defense to fraud in fact.

*Spatz*, 222 B.R. at 169.  If the moving party proves fraudulent intent, then the transfer is

deemed fraudulent, even if it is in exchange for valuable or full consideration.  *Id.*

Under § 160/5(a)(2) of the UFTA, "fraud in law," on the other hand, does not require

any showing of fraudulent intent. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128

F.3d 1074, 1079 (7th Cir. 1997); *Scholes*, 56 F.3d at 757.  Rather, fraud is presumed if a

debtor transfers property for less than adequate value and is thereby unable to meet his

obligations. *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54, 73 (Bankr. N.D.

Ill. 2002).  Because of its nature, the conveyance is deemed constructively fraudulent. *Daley*

*v. Chang (In re Joy Recovery Tech. Corp.)*, 257 B.R. 253, 268 (Bankr. N.D. Ill. 2001). The movant has the burden of proving fraud in law by a preponderance of the evidence. *Joy Recovery*, 286 B.R. at 73; *Martin*, 145 B.R. at 946. A different standard of proof applies to this theory because intent to defraud is presumed when the elements of constructive fraud are established. *Martin*, 145 B.R. at 946. The distinction between "fraud in fact" and "fraud in law" is derived from whether or not there is any consideration for the conveyance at issue. *Second Nat'l Bank of Robinson v. Jones*, 33 N.E.2d 732, 736 (Ill. App. Ct. 1941).

In order for the Trustee to establish that a conveyance is fraudulent in law under § 160/5(a)(2), four elements must be present: (1) the Debtor made a voluntary transfer; (2) at the time of the transfer, the Debtor had incurred obligations elsewhere; (3) the Debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and (4) after the transfer, the Debtor failed to retain sufficient property to pay his indebtedness. See *Lease Resolution*, 128 F.3d at 1079.

What constitutes "reasonably equivalent value" for purposes of the UFTA has not been defined by Illinois case law. The Illinois Supreme Court, in discussing a prior statute, stated that one of the necessary elements to establish a fraudulent conveyance is that "there must be a transfer made for no or inadequate consideration[.]" *Gendron*, 564 N.E.2d at 1215; See also *Image Worldwide*, 139 F.3d at 577 (discussing Illinois's interpretation of "reasonably equivalent value"); *Regan v. Ivanelli*, 617 N.E.2d 808, 814 (Ill. App. Ct. 1993) (*citing Gendron*). In determining whether reasonably equivalent value was received under the UFTA, courts should consider how that phrase has been construed under the Bankruptcy Code. *Image Worldwide*, 139 F.3d at 577. In section III.A.2 of this decision, the Court set

-34-

forth the applicable analysis for determining reasonably equivalent value. Those standards

apply equally to whether reasonably equivalent value was received under the UFTA.

The UFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is

greater than all of the debtor's assets at a fair valuation." 740 ILL. COMP. STAT. 160/3(a).

This definition of insolvency mirrors the balance-sheet test for insolvency under the

Bankruptcy Code. 11 U.S.C. § 101(32). The UFTA also provides that "[a] debtor who is

generally not paying his debts as they become due is presumed to be insolvent." 740 ILL.

COMP. STAT. 160/3(b).

Once the fraudulent nature of a transaction is established, § 160/9 permits a money

judgment against the first transferee of the asset or the person for whose benefit the transfer

was made or any subsequent transferee other than a good-faith transferee who took for value

from the subsequent transferee. In particular, § 160/9(b) provides as follows:

> Except as otherwise provided in this Section, to the extent a
> transfer is voidable in an action by a creditor under paragraph
> (1) of subsection (a) of Section 8, the creditor may recover
> judgment for the value of the asset transferred, as adjusted
> under subsection (c), or the amount necessary to satisfy the
> creditor's claim, whichever is less. The judgment may be
> entered against:
>
> > (1) the first transferee of the asset or the
> > person for whose benefit the transfer was
> > made; or
> >
> > (2) any subsequent transferee other than a
> > good-faith transferee who took for value or
> > from any subsequent transferee.

740 ILL. COMP. STAT. 160/9(b).

-35-

### 1.     740 ILL. COMP. STAT. 160/5(a)(1)

First, the Court will address the Trustee's claim that the transfer of the Aurora Property by the Debtor to Jodi constituted fraud in fact or actual fraud pursuant to § 160/5(a)(1) of the UFTA.  Under § 160/5(a)(1), a transfer can be fraudulent if it was made with "actual intent to hinder, delay, or defraud" creditors. 740 ILL. COMP. STAT. 160/5(a)(1).

At this point, it is helpful to analyze the evidence in terms of the "badges of fraud," many of which are not present in this matter.  First, the Debtor did not retain possession of the Aurora Property after the transfer.  Next, the transfer was recorded in DuPage County, Illinois, and was disclosed in the Debtor's Statement of Financial Affairs.  (Defs. Ex. No. 26 & Trustee Ex. No. 1, Statement of Financial Affairs.)  Further, there was no evidence adduced that the Debtor had been sued or threatened with suit, other than by Jodi, before the transfer was made.  Additionally, the Debtor did not abscond, nor did he conceal assets.  Moreover, there was no evidence that the transfer occurred before or after a substantial debt was incurred.  Finally, the Debtor did not transfer the essential assets of a business to a lienor who transferred the assets to an insider of the Debtor.

There are several badges of fraud, however, that do exist in this matter. The transfer of the Aurora Property was made to an insider—the Debtor's former spouse.  The transfer was of substantially all of the Debtor's assets.  Indeed, the $28,500.00, which represents the Debtor's one-half interest in the equity in the Aurora Property, greatly exceeded the approximate $8,500.00 in property he retained under the Settlement Agreement.  Moreover, the Court previously determined that the Debtor was insolvent at the time or became insolvent shortly after the transfer was made.  Lastly, the Court also found that the value of

-36-

the consideration received by the Debtor was not reasonably equivalent to the value of the Aurora Property.

In sum, it appears that four of the eleven badges of fraud are present. Nevertheless, the Court finds that the Trustee has not demonstrated that the Debtor made the transfer of the Aurora Property to Jodi with "actual intent to hinder, delay, or defraud" his creditors. Because § 548 of the Code and § 160/5 of the UFTA are analogous, the findings with respect to § 548(a)(1)(A) apply equally to the requirements of § 160/5(a)(1). *See Spatz*, 222 B.R. at 164; *Randy*, 189 B.R. at 443. Thus, for the same reasons articulated pursuant to § 548(a)(1)(A), the Court finds that the Trustee failed to establish by clear and convincing evidence or by a preponderance of the evidence that the transfer of the Aurora Property from the Debtor to Jodi constituted actual fraud under § 160/5(a)(1) of the UFTA.

### 2.    740 ILL. COMP. STAT. 160/5(a)(2)

Next, the Court must determine whether the transfer was constructively fraudulent under § 160/5(a)(2) of the UFTA. Under this alternative theory, the Trustee must show that the Debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and that the transfer rendered the Debtor insolvent.

The Court finds that the Trustee has met all of the elements to establish a cause of action under § 160/5(a)(2). Because § 548 of the Bankruptcy Code and § 160/5 of the UFTA are analogous, the findings made with respect to § 548(a)(1)(B) apply equally to the requirements of § 160/5(a)(2). *Id.* Thus, for the same reasons articulated *supra* with respect to § 548(a)(1)(B), the Court finds that the Trustee has demonstrated that the transfer of the Aurora Property by the Debtor to Jodi was constructively fraudulent under § 160/5(a)(2) of

-37-

the UFTA. As such, the transfer is avoidable under § 544(b)(1) and the Trustee may recover

under § 550(a)(1) $20,000.00 from Jodi for the benefit of the Debtor's estate. Pursuant to

§ 160/9(b), the Court enters judgment against Jodi in the sum of $20,000.00 and in favor of

the Trustee.

**D.    Count IV: 740 ILL. COMP. STAT. 160/6 and 160/9(b)**

In Count IV of the complaint, the Trustee seeks to avoid the alleged fraudulent

transfer of the Debtor's interest in the Property to Jodi pursuant to § 160/6 of the UFTA, 740

ILL. COMP. STAT. 160/6, and recover the present value of the amount of the transfer from Jodi

under § 160/9(b). The Trustee contends that the transfer of the Aurora Property to Jodi was

made by the Debtor without receiving a reasonably equivalent value in exchange for the

transfer. Further, the Trustee alleges that the Debtor was insolvent as a result of the transfer.

Section 6 of the UFTA pertains only to claims arising before an alleged fraudulent

transfer and provides as follows:

> § 6. (a) A transfer made or obligation incurred by a debtor is
> fraudulent as to a creditor whose claim arose before the
> transfer was made or the obligation was incurred if the debtor
> made the transfer or incurred the obligation without receiving
> a reasonably equivalent value in exchange for the transfer or
> obligation and the debtor was insolvent at that time or the
> debtor became insolvent as a result of the transfer or
> obligation.

-38-

(b)  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

740 ILL. COMP. STAT. 160/6.[6]

The elements of a cause of action under § 160/6(a) of the UFTA are: (1) a transfer was made by the Debtor; (2) the Debtor made the transfer without receiving a reasonably equivalent value in exchange for the transferred property; and (3) the Debtor either was insolvent at the time of the transfer or became insolvent as a result of the transfer. *See Creditors' Comm. v. Jumer (In re Jumer's Castle Lodge, Inc.)*, 329 B.R. 837, 842 (Bankr. C.D. Ill. 2005); *Joy Recovery*, 286 B.R. at 77; *In re Liquidation of MedCare HMO, Inc.*, 689 N.E.2d 374, 380 (Ill. App. Ct. 1997); *Falcon v. Thomas*, 629 N.E.2d 789, 795 (Ill. App. Ct. 1994). Intent is not an element under § 160/6(a). *Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 719 (7th Cir. 2002). The first two elements of § 160/6(a) are the same as those of § 160/5(a)(2). *Joy Recovery*, 286 B.R. at 77.

A fraudulent transfer claim brought under § 160/6(b) of the UFTA is commonly referred to as an insider preference claim. *Arachnid, Inc. v. Valley Recreation Prods., Inc.*, No. 98 C 50282, 2001 WL 1664052, at *6 (N.D. Ill. Dec. 27, 2001). This cause of action must be filed within one year after the transfer was made. 740 ILL. COMP. STAT. 160/10(c) Under § 160/6(b), the elements of the cause of action are: (1) the creditor's claim arose before the transfer; (2) the Debtor made the transfer to an insider for an antecedent debt; (3)

---

[6]  The Trustee does not specify in his complaint whether he is seeking relief under subsection (a) or (b) of § 160/6. Thus, the Court will address both subsection.

the Debtor was insolvent at the time of the transfer; and (4) the insider had reasonable cause

to believe that the Debtor was insolvent. *See* 740 ILL. COMP. STAT. 160/6(b).

1.    **740 ILL. COMP. STAT. 160/6(a)**

The Court finds that the Trustee has demonstrated all of the requisite elements to

sustain a cause of action under § 160/6(a).  First, the Trustee established that creditors'

claims arose before the transfer of the Aurora Property by the Debtor to Jodi.  The Debtor's

Schedule F Shows unsecured debt in excess of $69,000.00.  (Trustee Ex. No. 1 & Defs. Ex.

No. 25, Schedule F.)  Many of those debts were incurred in 2001, several years prior to the

transfer of the Aurora Property in September of 2004.  Second, the Trustee established that

a transfer was made by the Debtor.  Third, as discussed *supra*, the Trustee established that

the Debtor made the transfer without receiving a reasonably equivalent value in exchange

for the transferred Aurora Property.  Finally, the Court previously determined that the Debtor

was insolvent at the time of the transfer or became insolvent as a result of the transfer.

Therefore, the Trustee has established all of the elements necessary to sustain a cause of

action under § 160/6(a) of the UFTA.  Pursuant to § 160/9(b), the Court enters judgment

against Jodi in the sum of $20,000.00 and in favor of the Trustee.  The transfer of the Aurora

Property by the Debtor to Jodi is avoidable under § 544(b)(1).  Under § 550(a)(1), the

Trustee may recover from Jodi, for the benefit of the Debtor's estate, $20,000.00, which

represents the value of the Debtor's one-half equity interest in the Aurora Property, less the

property he received under the Settlement Agreement.

-40-

## 2.    740 ILL. COMP. STAT. 160/6(b)

Next, the Court must determine whether the Trustee has established all of the necessary elements to sustain a cause of action under § 160/6(b). First, the Court found *supra* that creditors' claims arose prior to the transfer. Second, the Court determined that the Debtor made the transfer to an insider, his former spouse. Third, the Court previously found that the Debtor was insolvent at the time of the transfer. Furthermore, the Court finds that Jodi had reasonable cause to believe that the Debtor was insolvent. She testified that she and the Debtor had borrowed money from Dale prior to the transfer and that not all of the money had been repaid. Also, she testified that she was receiving threats of collection from some of the Debtor's creditors immediately after the dissolution of their marriage. Thus, the Court finds that Jodi must have suspected or known of the Debtor's insolvency.

Finally, the Trustee must show that the transfer was for an antecedent debt. The Debtor and Jodi undertook various duties and obligations to each other pursuant to the Settlement Agreement. Thereby, they were creditors of each other for purposes of 11 U.S.C. § 101(10). Indeed, the Debtor's execution and delivery of the deed to the Aurora Property to Jodi took place on September 30, 2004, incidental to the Debtor's debts and obligations to Jodi under the antecedent Settlement Agreement. As between those two parties, the conveyance occurred upon delivery of the deed to Jodi. Hence, the transfer of the Aurora Property by the Debtor to Jodi was for an antecedent debt.

In conclusion, the Court finds that the Trustee demonstrated all of the requisite elements under § 160/6(b). Pursuant to § 160/9(b), the Court enters judgment against Jodi in the sum of $20,000.00 and in favor of the Trustee. The transfer of the Aurora Property by

-41-

the Debtor to Jodi is avoidable under § 544(b)(1). Under § 550(a)(1), the Trustee may recover from Jodi, for the benefit of the Debtor's estate, $20,000.00, which represents the value of the Debtor's one-half equity interest in the Aurora Property, less the property he received under the Settlement Agreement.

E.     **Count V: 740 ILL. COMP. STAT. 160/9(b)**

Finally, the Trustee alleges in Count V of the complaint that he is entitled to recover the present value of the amount of the transfer from Jodi, the initial transferee, or from Dale and Sandra, the subsequent transferees. As the Court found *supra*, the transfer of the Aurora Property by the Debtor to Jodi was fraudulent under the UFTA. Accordingly, the Court grants judgment in favor of the Trustee and against Dale and Sandra. Pursuant to § 160/9(b), the Trustee may recover from Dale and Sandra, for the benefit of the Debtor's estate, the sum of $20,000.00, which represents the value of the Debtor's one-half equity interest in the Aurora Property, less the property he received under the Settlement Agreement.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants judgment in favor of the Trustee and against Jodi under Counts I, III, and IV of the complaint and finds that the Debtor's transfer of the Aurora Property to Jodi was a constructively fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B), 740 ILL. COMP. STAT. 160/9(b), 740 ILL. COMP. STAT. 160/5(a)(2) and 160/6(a) and (b). Thus, the Trustee may avoid the transfer of that Property by the Debtor to Jodi pursuant to 11 U.S.C. § 544(b)(1). Under 11 U.S.C. § 550(a)(1), the Trustee may recover from Jodi, for the benefit of the Debtor's estate, the sum of $20,000.00, which represents the

-42-

value of the Debtor's one-half equity interest in the Aurora Property, less the value of the

property he received under the Settlement Agreement. In addition, the Court grants judgment

in favor of the Trustee and against Dale and Sandra pursuant to Counts II and V of the

complaint. The Trustee may recover under 11 U.S.C. § 550(a)(2) and 740 ILL. COMP. STAT.

160/9(b) from Dale and Sandra, as subsequent transferees of Jodi, for the benefit of the

Debtor's estate, the sum of $20,000.00, which consists of the value of the Debtor's one-half

equity interest in the Aurora Property, less the value of the property he received under the

Settlement Agreement. The Trustee may recover only one satisfaction from the Defendants

pursuant to 11 U.S.C. § 550(d). Finally, the Court denies the Defendants' motion for

judgment on directed findings under Bankruptcy Rule 7052.

This Opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be

entered pursuant to Federal Rule of Bankruptcy Procedure 9021.


**ENTERED:**


DATE: ___12/12/6___          _____
                                   **John H. Squires**
                          **United States Bankruptcy Judge**


cc: See attached Service List

## SERVICE LIST

### David E. Grochocinski, Trustee v. Jodi Knippen, Dale Cutsinger, and Sandra Cutsinger
**Adversary No. 06 A 00588**

Arthur W. Rummler, Esq.
Grochocinski Grochocinski & Lloyd,
Ltd.
1900 Ravinia Place
Orland Park, IL 60462

Joseph R. Voiland, Esq.
1625 Wing Road
Yorkville, IL 60560

Sarah L. Poeppel, Esq.
608 S. Washington Street
Suite 210
Naperville, IL 60540

David E. Grochocinski, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606